Your Honors, Monica Knox for Mr. Graves Appellant, and I'll reserve two minutes of my time for rebuttal and keep track of my own time. This case, like the prior case, is about the difficulty of a prisoner receiving due process. The essence of due process at a prison disciplinary hearing is the opportunity to put on your documents, put on the defense. The only exception to the right to put on that defense is if it's unduly hazardous to institutional safety or there is another non-arbitrary reason for denying the prisoner the right to call his witnesses or to put on his documentary evidence. Here, nobody has ever claimed that there was any institutional security reason for denying Mr. Graves the right to call his witnesses and put on his documentary evidence. Scalia, what would have happened if the snitch was disclosed? He wasn't asking for the name of the snitch. He was asking to call the witnesses who were recipient witnesses to the Why did you search my cell? Right, but he didn't ask for the name of the confidential informant. He asked if there was a confidential informant, because if there were a confidential informant, even without knowing that person's name, it would lend support to his defense that this was not his heroin and that it had been placed there by some other prisoner who was then going to trade it for leniency. So he didn't need the name of the confidential informant. I would agree that if he had asked for that, there could clearly be an institutional safety reason for not providing it, not necessarily in every case, but in some. But that's not why his witnesses were denied, and it's not what he was asking for. Counsel, under Wolf, though, he's not entitled to irrelevant, confidential or unnecessary information, right? Yes. Okay. So in this particular case, the SHO's denial of his request to call officers I want to make sure I get this right, McCoy, Meadows, and Chambra, he didn't demonstrate, he didn't offer any proof as to what these evidence could, what evidence they could provide that was relevant. They weren't present during the search of the cell. They had no information pertaining to his knowledge of the heroin stash in his van, right? No. Yes or no? The only part that's right is that last part, that they would have, they, we have no reason to believe they would have any evidence as to who was responsible for the heroin in the van. Were they involved in the search of the cell? Well, what the evidence shows. Now, I think we have to step back for a minute and realize that Mr. Graves has never had an opportunity in any court, in any system, in any prison hearing to put on any evidence. He's made allegations in his petition which he never, there was never a hearing, never any fact development, and so we have to take those allegations as true at this point. His allegation is that the four officers came to the cell to do the cell, the cell search. The two of those officers then took Mr. Graves and his cellie to a holding cell, which he says was atypical searching, took them to a holding cell. That the two other officers searched the cell, and that that search had been authorized by the sergeant who, because of a tip about, you know, him having, dealing drugs inside the prison. No, he did know that there was a tip. Pardon me? He did know there was a tip. Well, that, he believes that there was a tip, and that's his allegation, but he's never been given the opportunity to present the evidence on that. What evidence did he want to present? That what? To prove what? That it was somebody else's, that it wasn't his. What was the evidence he wanted to put on? He wanted to put on the four officers that were involved in this, that came to the cell that day to search. He wanted to put on. Well, what he, they're all precipitant witnesses, and generally, he, all right. We need to step back again. He's an ad sac. He's brought into ad sac. He can't go interview anybody. He can't ask questions. He can't interview anyone. But he did have someone who was an investigator. Exactly. And he didn't ask them to. Yes, he did. His allegation is quite clear that he, and the report from the IE, the investigating employee, is quite clear, that he asked that investigating employee to interview all four of these witnesses, and the only one that ever got interviewed was Officer Weston. So he did ask, and it didn't get done. Now, he doesn't know what they're going to say, but they're precipitant witnesses to this event. They would have reason to know something. It's not speculative. They were there. No, wait. They, what are they, they're not precipitant witnesses to who put the narcotics in this device. Right. Nobody's a precipitant witness to that. And that's the issue, isn't it? I mean, there's no doubt the narcotics were in this container, or whatever it was. So they, that would, they couldn't have helped on that. Everybody agrees it was there. The question is, did somebody else, sometime earlier, put it there? They're not precipitant witnesses to anything relating to that question. Well, but if they, as Mr. Grave alleges, if those officers knew the reason they went to that cell, that they had been told that you need to go search Grave's cell because we have information from the CI that he's dealing in drugs, they would know that. Yeah. And that tells him. That helps him to further his contention that it wasn't him, it was somebody else who planted it for his own individual reason. You have to remember that Mr. Graves had only had this fan for a couple of days. The other, which brings me to the other point of what he was denied, which was the debt. You're claiming that in prison, snitches will enter somebody else's cell, deposit in a hidden place a considerable amount of hard drugs, and then leave. Well. Is that realistic, really? Well, first of all, I'm not. Tell me, is that realistic? Well, did it occur regularly? No. Did it ever occur? It's a possibility, but it's not, Your Honor, it's not. That wasn't his allegation to start with. He only had this fan for a few days. He alleged that it had been put into the fan at some point before he got it, which he can allege because he knows he didn't do it, and he knows his cellie never touched the fan. And he wouldn't tell who did sell it to him, right? Well, it was only who sold him the fan. That didn't make it that person who did it. The fact that he wants to put on a defense doesn't mean that because he may have information that would relate to another defense, he's required to put that on. So, counsel, is it your position that despite Wolf, that in effect there are no rules of evidence, there's no, basically a prisoner can allege whatever he or she wants, can say whatever they want, is entitled to any witnesses they want, and just spin it out, see whatever they can find? Is that what you're telling us? Your Honor, I think that's an unfair characterization of the argument. I have not in any way argued that he could call anyone. If he said, I want to call Judge Reinhardt as a witness, no, I don't think he could do that. He asked to call his cellmate and the three other officers involved in the search. They are percipient witnesses to what went on that night. This is not a stretch to think they have some relevant information. But he's not claiming that it was planted that night. No, but the evidence about what happened that night was relevant to support his theory that this was planted before. I don't see the connection. If it was planted before, the fact that other guards came and left before the search, they are not the witnesses you need to show that it was planted before. If the other guards came because they had been told it was a CI, it lends some support, all relevancy is. So all you want to- There's some chance and some belief and reason that it will add to something. That's all you want to establish is that the reason they were there is that there was an informant who told them there were narcotics in this fan. Is that it? Well, yes. Well, obviously someone told them there were narcotics in the fan and they wouldn't have come for that search. Well, except the hearing officer denied these witnesses because Officer Weston testified that there wasn't a CI. So it wasn't obvious to the CO and it hasn't been obvious to any court before you just said it. And if it is obvious, he got to put on that evidence to try to convince the hearing officer. The officer who testified said he just happened to come there? He didn't have any information in advance? He said it was a random search, yes. He did make some comment about weeks ago he may have heard a rumor. He said it was a random search. That's unclear. Mr. Ray claims that it was ordered by the sergeant. The sergeant says that she has no recollection of it. But it's unclear who ordered it. Weston, the only officer who did testify, who participated in the search, said he just had time and so he just went and did it. Thank you. I thank you. May it please the court, my name is Heather Heckler, the Deputy Attorney General representing Mr. Knowles. This court should affirm the district court's denial of the habeas petition for three reasons. First, no due process violation occurred at Mr. Graves' hearing. Second, any conceivable due process violation is harmless. And third, Graves received the effective staff assistance in an unbiased hearing at the disciplinary hearing. An unbiased hearing. As your Honor pointed out, clearly established federal law does provide a limited right to witnesses at a disciplinary hearing. However, prison officials do have the right to deny witnesses in order to not only ensure institutional safety, but also to keep the hearing within reasonable time limits, to ensure that relevant witnesses have relevant information, and to provide for swift discipline. Speaking of disciplinary hearings, our Supreme Court has even stated that it is going to be rarer, if ever, that an inmate is going to be able to successfully challenge a disciplinary hearing. And in this case, Mr. Graves has not shown any due process violation in the hearing officer's denial of his witnesses. Counsel, is it the State's position that if a prisoner asks that someone appear and they are denied that, do they have to proffer what they think they're going to Is that part of the obligation of the prisoner in this case? Your Honor, if it's unclear, in this case, opposing counsel stated that he never had an opportunity to present a defense. However, he did have the opportunity. He was interviewed by the investigative employee prior to the disciplinary hearing. The information that the hearing officer had, the information that the investigative employee had, were that these three officers that he was denied had no participation at all in the cell search. When you read the rules violation report, it only mentions the reporting officer. And then it mentioned that these other two officers escorted him from his cell to a holding cell. Based on that information, how would a hearing officer understand that they have any relevant information? Well, did the officer testify that it was purely random, that he didn't have any suspicion about him as opposed to his cellmate? Yes, Your Honor, he did. Then why did they take the cellmate away and leave him there? Your Honor, whenever a cell is searched, they take everyone away. That's just common practice. But they didn't take him away, I thought. I thought they left him there and took the cellmate away. Your Honor, they took both of them. They took both of them. To a holding cell. And that's just standard prison practice. And at that point, even if it was random, they're searching not only Mr. Graves' materials in his cell, but then they're also searching the cellmate's. So they would both need to be taken away. I see. And in this case, yes, he would have had to explain. And I think when you have a rule violation report which doesn't even mention one officer by name and specifically states that the other two officers simply escorted him to the cell, the hearing officer is going to make his decision as to whether or not these officers would have relevant information based on the information in front of him. If Mr. Graves' allegation was that these officers did indeed participate in the cell search, he had two opportunities to explain that. He had the interview with the investigative employee before the hearing. And at that point, he did have the rules violation report. It was given to him on, I believe, April 22nd. And he had his interview with the investigative employee on May 15th. So at that point, he would have understood it's his allegation these officers did participate. And he would have understood at that point that they were not mentioned at all in the rules violation report. And that would certainly be something you would expect him to mention to the investigative employee. But he did not. So these officers, these three officers, did not have any relevant information. As opposing counsel stated, the only information they could have provided was that they took him from his cell and concerning the tip, even if they had participated in the cell search, they would have possibly testified that this search was the result of a confidential informant tip. Again, as the district court noted, that doesn't go to who put the drugs in the cell. You have confidential informants in prison on a frequent basis. And they don't always tell because they did something. They may have other motivations. And it would not have changed the outcome. I'm not sure that you've answered my question, counsel. You told me that the prisoner was aware of what the position was before the hearing. But does, under the state's position, does the prisoner have an obligation, if he or she wants to have a witness produced and testify and they're denied that right, do they have an obligation to say why it is that they wanted the witness to appear, like they would have to in, say, a civil context? Your Honor, yes. Especially if it's – in this case, for example, the cellmate was denied without any reason. It looks like the hearing officer just neglected to state that. I don't think in that case he does have an obligation because the cellmate was in the cell and may have relevant information. For example, if the reporting officer was denied by the hearing officer, I think he has no obligation to explain how an officer who wrote a report concerning the incident would need to be relevant because that is just obvious to a hearing officer. But when you have a prisoner, for example, he could just say, I want inmate X on yard B to testify. The hearing officer has absolutely no idea why that particular inmate would have any relevant information, and that's essentially what we have here. And in that case, he does have an obligation because otherwise there's going to be no information concerning how it's relevant. And if there's no information, excuse me, on the record, either through the rules violation report or given by the inmate, as to how that particular witness would be relevant, you could have an inmate calling 20 different witnesses to explore 20 different defenses, none of which might even go to the issue at hand. Do any of the state's regulations require the prisoner to do that? I mean, it makes sense that the hearing officer has no basis for making a ruling if there is a contested ruling, unless he or she knows what the prisoner wants to accomplish by having a witness there. Is there anything in the regulations that deals with that? There's nothing in the regulations other than, like in Wolfe, a hearing officer may deny based on relevance. And so once that's done, the hearing officer's decision is based on what he had in front of him. In fact, there's a case out of the Seventh Circuit, Hamilton v. O'Leary, that deals with a similar issue. It wasn't calling witnesses, but in that particular case, an inmate did not explain the defense that he was going to present at the hearing. And the court found that the hearing officer simply could not be expected to understand why he wanted to call those witnesses without some explanation from the inmate and found that there was no violation. What's the Seventh Circuit case? The Seventh Circuit case is Hamilton v. O'Leary, and it's 976 F. 3rd, 341. And again, that wasn't dealing specifically with the calling of witnesses, but the fact that an inmate does have to present his defense at a hearing in order for a court later to review that defense and understand if the hearing officer made an appropriate decision. What is the relief requested in this habeas case? Your Honor, it's slightly unclear. Mr. Graves did not lose any discipline or good time credit for this. He is required, and I believe he's still required, to attend an alcoholics anonymous or narcotics anonymous meeting. And if this disciplinary were removed from his file or overturned, he would not have to attend that anymore. And his disciplinary would be removed from his file. When was this hearing? I think it was in 2002, Your Honor. 2002, and he's still got to go to alcoholics? I believe. There's no indication in the record that he doesn't have to. In the rule violation report, there was no time limitation placed on those hearings, as far as I can tell, Your Honor. Is it the State's position in criminal cases that a person has to get the approval of a judge before they can subpoena a witness? Your Honor, I'm not sure. That's his case, isn't it? The State says, yes, you've got to get the approval of the hearing officer. Yes, and that's clearly established. Doesn't that violate due process? According to the Supreme Court, it does not. Doesn't due process require that you're entitled to have anybody that you think is going to help you? No, Your Honor. Can any court testify? The testimony may be irrelevant. There may be a lot of objections to it, but the right to appear as a witness in favor of somebody I thought was always the system of an open society rather than a closed society. Your Honor, the Supreme Court has clearly held that prison disciplinary hearings are different than a criminal trial. While prison inmates do have certain rights, the Supreme Court has specifically stated that they do not have the full panoply of rights. Why isn't that wrong? Why doesn't that violate federal due process? Because, Your Honor, this is a prison disciplinary hearing, and they need to ensure This is a habeas corpus case, which is a federal case. Yes, Your Honor. So why don't we apply federal law? Why don't you? When he said the Supreme Court, I assumed he meant the United States. The United States Supreme Court in Wolfe v. McDonald specifically addressed this issue and has specifically stated that the hearing officer may deny witnesses. The Supreme Court has stated that prison disciplinary hearings are different than a criminal trial, and the inmates do not have the full rights. Do they have to give a reason why they're denying witnesses? According to the U.S. Supreme Court, they must give a reason either at the time of the hearing or after. They don't have to put it on the record, but at some point they do need to give a reason for denying the witnesses. I see my time's up. I would just like to state that even if there was a due process violation, as Your Honors were questioning opposing counsel, this was harmless because it would have provided no relevant information that would have changed the decision. And with that, I would ask the Court to affirm the district court's decision. Thank you. May I have one minute? Yes. On the issue of proffer, there are two important things I think to point out. One is that counsel herself conceded that if they were reporting officers, that he wouldn't have to make a proffer. Mr. Graves has alleged that the evidence showed that each of them had written a report, that Sergeant Rohan had testified that all four of those officers would have written a report. And so they were all reporting officers according to the allegations made. The other important part about the proffer is that the investigating employee never interviewed these witnesses, so obviously it would have been virtually impossible to make a proffer as to what they would have testified to. And Mr. Graves has alleged that the hearing officer at the initial part of the hearing in July, the hearing officer found that they could testify. He couldn't find them, so he recessed it. That three weeks later, the investigating officer came back to him and said, the hearing officer wants to just close out this. You waive your right to those witnesses and close this out. Mr. Graves refused, and his allegation is that the hearing was then just they just closed out the hearing and backdated the papers. Now, that's his allegation, and there has been no evidence as to that. And so if you look at those allegations, which at this point we have to take as true, because that's what he's been denied on, is these allegations. If you look at those allegations, he didn't have to make a proffer because the hearing officer had already found they would testify. It was only afterwards that the hearing officer found, when Mr. Graves had no opportunity to make any proffer at that point, that the hearing officer found that they had nothing relevant to that. I just want to finish with one thing, following up on what Judge Reinhardt asked counsel for the State. What's your client looking for in this case? A new hearing that comports with due process. He is out of prison, right? Oh, no. Oh, he's not. Okay. I'm thinking of a different case. I apologize. No. In fact, the way that besides in addition to Do you know whether he's still taking alcohol and drug courses as a result of this? Six years ago? I do not know that, Your Honor, but there is another way at which this is relevant and the prior case establishes that. Mr. Graves is a lifer. He's subject to parole eligibility in front of the board. The board is going to use this and does use this disciplinary in denying him parole. And in Dotson, this Court found that that type of thing allows him to proceed. Now, am I correct that the witnesses you wanted to have were only those guards that took him from his cell to the holding area while the search was conducted? There were three officers, two that took him to the holding cell and one that there's reason to believe participated in the search, and then his cellmate, who would know what to if the reason he wanted his cellmate is because the cellmate would say that the only thing searched had been the fan, which shows it wasn't a random search where they were just going through all the property, but that it was probably based on a CI that was pinpointed to the fan. So those are the four witnesses. And if you knew that it was a confidential informant who said that he was selling narcotics in the prison, and then therefore they searched his cell, what would that show? It doesn't prove anything, but by itself it doesn't prove anything. But it is support for his contention, his defense, that he didn't put them in the fan, he had only had the fan for a couple days, which is undisputed, and that they were put in the fan by somebody else who now is then using that information. It doesn't prove that, but the hearing officer would have considered it in deciding the credibility of Mr. Graves, that it wasn't his. It's troublesome, I would say at least, that he wouldn't tell the prison authorities who gave him the fan that he claims had the narcotics in it. I agree that there is something else, there is something in addition that Mr. Graves could have done, and that's not unusual for a criminal type of proceedings. We can't always get our clients to do everything they could do. Not everything. He's claiming that somebody put this in the fan, which he'd only had a few days. The most logical person to put it in the fan is the person who gave the fan to him. Well, actually, I think from Mr. Graves' allegations, that's quite clearly not true, because his the other evidence that he was denied the right to present was the evidence about the packaging of all of this, because he wanted to show that this stuff had been in the fan for a long period of time. And that fan, according to the allegations, that fan had been in circulation inside the prison among many prisoners. So it is... How do they know about the packaging? There were some pictures of it, and they're in, they're very bad pictures, and they're photocopies of pictures, and so they're in the excerpts. But he makes an allegation that they were, it was very old and dusty, and also had a wrapping that had some other prisoner's name and number on it. It was a medical chrono. When did he find out about the packaging? He never got to see it. He asked to see it, and the I.E. told him it was granted, but never gave it to him. And so he was never seen it, and it wasn't present at the disciplinary hearing. And so the hearing officer who decided this case had never seen it. And that's one of his complaints. That's the other component. Besides those four witnesses I talked about, he wanted the actual evidence presented. When they did drug testing on your client, what did they find? I'm not sure there's any evidence in the record about this. What evidence is in the record, though, is that Mr. Grace has been in prison for 30 years, and this was the first time related to any drug stuff at all. After 30 years? I mean, that alone makes it kind of what? After 30 years, he's decided to start dealing drugs? I'm not talking about dealing. I'm talking about what he had to say. I know what you're talking. And the record shows that both of them were tested, but there's nothing in the record that shows the results of those tests. We know that the search was not a random search. Well, we don't know that. We know that. We don't know that, and that's part of the problem, Your Honor. That's what Mr. Grace wanted to prove. The claim by the officers was that we were there because it was a random search. The one officer who testified said that he was there because it was a random search. There's evidence by other officers that this was not a random search. Right. What effect would that have? The effect that it would have would be to support his theory that there was a tip, and that that then supported the notion that somebody else may have put it in there and then tipped off the officers in order to get something for himself. The one thing I would note on the issue of whether these other officers are relevant and whether a CIA, if it had been a tip. Your theory is that somebody else put it in there, but your other theory was it had been in there a long time, right? Well, right, but those aren't inconsistent because the CIA may have planted it some time ago. But the one thing I would point out on the issue of this relevance, when Officer Westin, the only officer who testified at the hearing. See, I planted it years ago, and then at some point gave it to the person who gave it to your client. Well, what the record shows is the fan was in circulation for some period of time, so that many prisoners had control of the fan. But what I would note on the issue of relevance is that the hearing officer himself questioned Officer Westin, the only officer involved in this who testified. The hearing officer himself questioned Westin about whether it was a random or a CI search. So clearly the hearing officer thought there was some relevance to whether it was a random search or a search based on an informant. And it's just Mr. Grace was not allowed to put on other witnesses who would know that. Thank you. Thank you, Justice. The case just argued will be submitted.
judges: Ferguson, Reinhardt, M. Smith